In re Garry R. ADKINS and Charlotte J. Adkins, Debtors.

FIRST MISSISSIPPI BANK OF COMMERCE, Plaintiff,

v.

Garry R. ADKINS and Charlotte J. Adkins, and Jacob C. Pongetti, Trustee, Defendants.

Bankruptcy No. S80–10469.
Adv. No. S80–1107.

United States Bankruptcy Court,
N.D. Mississippi, E.D.

March 25, 1983.

Smith, Downs, Ross, Trapp & Coleman, Corinth, Miss., for plaintiff; Wendell H. Trapp, Jr., Corinth, Miss., of counsel.

Moffett & Thorne, Tupelo, Miss., for defendants Adkins; Michael G. Thorne, Tupelo, Miss., of counsel.

Jacob C. Pongetti, trustee, pro se.

## MEMORANDUM OPINION

EUGENE J. RAPHAEL, Bankruptcy Judge.

On October 16, 1980, debtors filed their joint voluntary petition in bankruptcy. Prior to the first meeting of creditors conducted under section 341(a) of the Bankruptcy Code, plaintiff bank filed its proof of claim herein and attached thereto copies of all of the promissory notes which were at the time allegedly owing by debtors to plaintiff bank as well as exhibits allegedly showing valid perfected security interests in certain real and personal property. On November 5, 1980, the 341(a) first meeting of creditors was conducted. Among the persons present at said meeting were Woodie Childers, president of First Mississippi Bank of Commerce (plaintiff herein), Jacob C. Pongetti, trustee, and said debtors. Both Garry R. Adkins and Charlotte J. Adkins, debtors, testified and were available for questioning and examination. During the course of said meeting the trustee announced that the realty in which plaintiff bank claimed a perfected second lien was then and there abandoned. The trustee also indicated that because of the voluminous nature of the other promissory notes and security documents, he was not in a position to announce during the course of said 341(a) meeting his intentions with respect to any potential abandonments of the remaining items of property.

On November 13, 1980, plaintiff bank filed its complaint in this adversary proceeding, praying "that all items of property described herein be abandoned by the trustee and released from all liens of the Bankruptcy Court and that First Mississippi Bank of Commerce be allowed to proceed

relative to said security in the manner it deems appropriate." The court regards as ineffectual surplusage the reference to "all liens of the Bankruptcy Court", but treats the remaining language as a prayer for abandonment of all property described in said complaint and a prayer for relief from the automatic stay as to all such property.

On November 28, 1980, Jacob C. Pongetti, trustee, filed an answer praying "for a judgment dismissing the complaint with respect to the Low Boy trailer, the contract rights, the equipment, the 1978 Chevrolet truck, and the Ford vehicle at plaintiff's costs, and judgment entered voiding plaintiff's lien and preserving the aforementioned property for the estate."

On December 15, 1980, defendant debtors filed their answer praying for "a judgment dismissing the complaint and judgment entered voiding plaintiff's lien and preserving the aforesaid property for the debtors." Debtors attached to their said answer a counterclaim praying that this court "declare all notes and deed of trust perpetrating a fraud upon defendants be declared null and void; further your debtors ask for a judgment from and against the plaintiff, First Mississippi Bank of Commerce, in the amount of $33,219.00, together with all costs and reasonable attorney's fees, to be determined by this court."

On January 21, 1981, plaintiff, as counter-defendant, filed its answer to debtors' said counterclaim. On February 2, 1981, Jacob C. Pongetti, trustee, filed an amended answer to the complaint and included a counterclaim praying for "an order avoiding the transfer of the Low Boy trailer and directing the plaintiff bank to make delivery to the trustee of either said trailer or the value thereof; declaring invalid and void as against the trustee the lien of the aforesaid deed of trust; restoring possession of the aforesaid real property to the defendant trustee and for an order providing for the sale of the aforesaid property."

On February 13, 1981, plaintiff, as counter-defendant, filed its answer to the counterclaim of said trustee.

On February 23, 1981, defendant debtors filed their amended answer praying for "rescission of note #8189 and deed of trust dated the 16th day of January, 1980, and judgment from and against the complainant, First Mississippi Bank of Commerce, in the amount of $2,000.00 plus reasonable attorney's fees and all costs of this action."

On February 26, 1981, this court conducted a hearing on the aforementioned complaint and on the aforementioned counterclaims as amended. At the conclusion of the hearing the court reserved its decision.

On April 19, 1982, a chapter 7 discharge as to said debtors was entered by this court.

At the commencement of the February 26, 1981, hearing all parties stipulated to the abandonment by the trustee of all personalty described in the pleadings except one certain Talbert Low Boy equipment trailer, on which plaintiff bank claimed a prepetition first lien arising out of a perfected security interest. By stipulation the issues were narrowed so as to litigate only such issues as remained as to said Low Boy trailer and as to the plaintiff bank's claimed second lien as to the real estate described in that certain deed of trust from Garry Adkins and wife, Charlotte Adkins, to Orma R. Smith, Jr., trustee for First Mississippi Bank of Commerce, bearing date of January 16, 1980, ostensibly securing an indebtedness represented by that certain promissory note from Garry Adkins and Charlotte Adkins to the First Mississippi Bank of Commerce, Walnut, Mississippi, in the principal sum of $53,856.00, payable in 72 monthly installments of $748.00 each, commencing on February 20, 1980, due and payable on or before the 20th day of each succeeding month thereafter, and bearing interest from maturity at the rate of 8½ per cent per annum.

Although said Low Boy trailer was repossessed by plaintiff bank "very shortly" after the filing of the chapter 7 petition herein, the uncontradicted evidence shows that plaintiff bank effectuated said repossession at the special instance and request of debtors, who gave absolutely no indication to plaintiff bank that debtors had filed a peti-

tion in bankruptcy. There was not a scintilla of evidence that plaintiff bank had any basis for knowing that such bankruptcy petition had been filed at the time when the repossession took place. Nevertheless, plaintiff bank acquiesced in the trustee's request that plaintiff bank temporarily surrender possession of said Low Boy trailer.

Under circumstances wherein plaintiff bank had neither actual nor constructive knowledge of the filing of said bankruptcy petition at the time when it, acting at debtors' special instance and request, repossessed said Low Boy trailer, this court is of the opinion that such repossession was neither a violation of the automatic stay nor of any order of this court. Persuasive support for this view is found in the case of *In Re Theodore Robert Abt, Jr.,* 2 B.R. 323, 5 B.C.D. 1237 (1980), decided by the United States Bankruptcy Court for the Eastern District of Pennsylvania. Certainly the evidence and the law show no lawful basis for the avoidance of plaintiff's lien. Neither does the evidence show any basis to prevent abandonment of the Low Boy trailer. The counter-claims suggesting otherwise are ineffectual and will be dismissed with prejudice by appropriate language in the order to be rendered herein.

## II

The order for the section 341(a) meeting of creditors included, inter alia, the following notice:

"FURTHERMORE this will serve as notice that at the above scheduled meeting the trustee will announce which assets he plans to abandon. Any objection to such abandonment shall be filed within ten days after such announcement. If objection is filed, the matter shall be set down for hearing. If no objection is filed the trustee shall be deemed to have abandoned the property with the court's approval..."

Neither the trustee nor the debtors nor anyone else filed any objection within ten days after the trustee's announcement on November 5, 1980, of his abandonment of the real estate described in the aforementioned deed of trust of January 16, 1980. Indeed, the trustee did not seek to object to his own abandonment of said real estate until the trustee filed his counterclaim on February 2, 1981. Also, debtors' brief filed with this court on April 2, 1981, included the following statement of position:

"The abandonment of the property has not been challenged because there is a first deed of trust on the subject property in favor of Fidelity Savings & Loan Association. Therefore, it is not a part of the bankruptcy estate and should be abandoned by the trustee."

It is clear that the debtors attended the 341(a) meeting and were available for full examination as to all circumstances that might affect the propriety of the abandonment of said real estate. No application was made by anyone for an extension of the ten days permitted for objections to the abandonment of said real estate. Objections interposed thereafter came too late. It is the opinion of this court that said real estate is deemed finally abandoned with the approval of this court as of November 15, 1980. An order to that effect will be entered.

## III

Debtors' amended answer and counterclaim realleged by reference all answers and allegations recited in their original answer and counterclaim. Among such allegations was the following:

"Further First Mississippi Bank of Commerce has perpetrated a fraud against your debtors by changing certain amounts, as noted, on notes and deeds of trust."

As to the affirmative defense of alleged fraud, debtors undertook the high standard of proof required of one alleging fraud. There simply is no credible evidence to support such allegation of fraud in this record.

## IV

Both the trustee and the debtors argued that plaintiff bank was required to give debtors notice of a right to rescind at the

time when the promissory note of January 16, 1980, was executed. Their argument is that said transaction is within the protection of the Consumer Credit Cost Disclosure Provisions of the Federal Truth in Lending Act as contained in 15 U.S.C. section 1601 et seq. and more specifically as contained in section 1635. However, said statutes pertain only to the extension of consumer credit and are made specifically inapplicable by federal statute to loans made primarily for business or commercial purposes. At the pertinent time section 1602(h) defines the term "Consumer" as follows:

"(h) the adjective "consumer", used with reference to a credit transaction, characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, household, or agricultural purposes."

Section 1603 describes those categories of transactions which are exempted from the requirements of the Consumer Credit Cost Disclosure Provisions of the Federal Truth in Lending Act, to wit:

"This subchapter does not apply to the following:

(1) Credit transactions involving extensions of credit for business or commercial purposes..."

■ The uncontradicted evidence is that the subject transactions in the case sub judice were primarily for business or commercial purposes and that they were not in any substantial way related to personal, family, household or agricultural purposes. This court is of the opinion that there was no legal requirement that debtors be provided a notice of right of rescission by plaintiff bank.

## V

■ There was extensive evidence with respect to the question of whether or not the lien of said deed of trust dated January 16, 1980, was impaired on account of an allegedly defective acknowledgement. Debtors and the trustee contended that that debtor Charlotte J. Adkins did not sign said deed of trust in the presence of the notary public. Even if Mrs. Adkins did not sign said deed of trust in the presence of a notary public, her affirmation that she did indeed sign such deed of trust renders such defense by debtors moot and without avail. There has never been any requirement of Mississippi law that such a deed of trust must be signed in the presence of a notary public in order to constitute a valid lien as between the lender and the borrower.

■ Although a defective acknowledgment by failure to sign in the presence of a notary public may theoretically make such a deed of trust ineligible for recording on the land rolls of a county, and thereby inoperative as notice to a third party such as the trustee herein, the evidence attacking the validity of the acknowledgment herein falls short of the quality of evidence needed to sustain such an attack. On contradictory evidence in this record, the court finds no sufficient basis in the evidence to overcome the presumed regularity of the acknowledgment of said deed of trust arising out of the signatures and acknowledgment shown thereon.

Accordingly, this court is of the opinion that neither the debtors nor the trustee has sustained the burden of the proof which they had as to their several counterclaims herein.

Appropriate language will be included in the court's order granting the plaintiff's prayers for the abandonment of all property described in the complaint, including the exhibits thereto. Plaintiff's prayer for the lifting of the automatic stay as to all of said property is now moot inasmuch as such stay was lifted by operation of law as to all valid pre-petition liens upon the entry of the discharge of said debtors on April 19, 1982. The order will dismiss all counterclaims with prejudice.

The foregoing memorandum opinion sets forth my findings of fact and conclusions of law. A proposed judgment is submitted herewith for signature by a United States District Judge.

## JUDGMENT

It appearing that by stipulation of all parties hereto Jacob C. Pongetti, trustee, abandoned all personalty except one certain Low Boy trailer described in the pleadings herein at the commencement of the hearing on February 26, 1981; and

It appearing that said Low Boy trailer should be declared abandoned; and

It appearing that plaintiff, First Mississippi Bank of Commerce, has sustained its burden of proof under its complaint filed herein; and

It appearing that neither Jacob C. Pongetti, trustee, nor either of said debtors has sustained his burden of proof with respect to the several counterclaims interposed herein; it is

ORDERED AND ADJUDGED that all personalty described in the pleadings herein except said Low Boy trailer be, and the same is hereby deemed abandoned with the approval of the court as of February 26, 1981; that said Low Boy trailer is hereby abandoned on the date of this judgment; that the real estate described in the deed of trust dated January 16, 1980, in this record is deemed abandoned with the approval of this court as of November 15, 1980; that the automatic stay herein is deemed to have been lifted as to all liens held by plaintiff, First Mississippi Bank of Commerce, against debtors, Garry R. Adkins and Charlotte J. Adkins, at the time when the petition was filed herein on October 16, 1980, said stay having been lifted by operation of law upon the entry of debtors' discharge order on April 19, 1982; and it is further

ORDERED AND ADJUDGED that the counterclaims, as amended, interposed by Jacob C. Pongetti, trustee, and by Garry R. Adkins and Charlotte June Adkins, debtors, be and the same are hereby dismissed with prejudice.